UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER G. VALENCIA,<br><br>              Plaintiff,<br><br>    v.<br><br>C.D.C.R., et al.,<br><br>              Defendants. | Case No.: 1:23-cv-000831-SKO<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING**<br><br>(Doc. 7)<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Christopher G. Valencia is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

### I.    INTRODUCTION

The Court issued its First Screening Order on January 3, 2024. (Doc. 6.) The Court determined Plaintiff had failed to state a claim upon which relief could be granted, (*Id.* at 4-15), and granted Plaintiff leave to file a first amended complaint. (*Id.* at 15-16.) On January 22, 2024, Plaintiff filed a first amended complaint. (Doc. 7.)

### II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III.   PLEADING REQUIREMENTS

#### A.   Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.   DISCUSSION

### A. Plaintiff's First Amended Complaint

Plaintiff names the following entities or individuals associated with California State Prison-Corcoran (CSP-COR) as Defendants in this action:

1. Lead Janitor T. Vargas
2. Officer Silva
3. Officer Lopez
4. Doe Director of Hospital[1]
5. Warden Tammy Campbell
6. "Hospital Insurance, Doe, Moes, Roes"

(Doc. 7 at 1-3.) Plaintiff seeks monetary damages totaling $1,500,000, a declaratory judgment,[2]

---

[1] Although the use of Doe defendants is generally disfavored, "'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities . . ..'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 E.2d 637, 642 (9th Cir. 1980)).

[2] "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict

an "order [that] the defendants herein to bond, there own defenses and claims, with out the aid of attorney generals office due to conflict of interest,"[3] and that the Attorney General's Office prosecute the defendants for "violations of law under the color of the law."[4] (*Id*. at 9.)

### B. Plaintiff's Claims

**Claim One**

Plaintiff's first claim for relief is titled "8th amendment; Violation, deliberate indifference, right to medical care." (Doc. 7 at 3.) The Court construes Plaintiff's first claim to assert Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Lopez, Silva, and Vargas.

<u>The Factual Allegations</u>

Plaintiff was injured on March 2, 2023, when he slipped "by walking onto a pool of water in the hospital hallway." (Doc. 7 at 3.) Plaintiff was unaware of the water and there were no "wet floor" signs or warnings of any kind. (*Id*.) Plaintiff states he struck the back of his head in the fall, was momentarily unconscious, and suffered a concussion. (*Id*.) When he regained consciousness, he noticed a large lump on the back of his head, and informed Defendant Vargas who had witnessed the injury and works at the hospital. (*Id*.) When Plaintiff informed Vargas of his injury and the lump on his head, Vargas ordered him to "get out his face an[d] stop bitching." (*Id*. at 3-4.) When Plaintiff asked Vargas to see a nurse, Vargas refused the request, stating, "Dude, if you keep this up I'm gonna send your ass back to your cell." (*Id*. at 4.) Plaintiff asked for medical aid again when he began to feel nauseous; Vargas denied the request and called Defendant Silva to

---

will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

[3] If Plaintiff wishes to pursue this remedy, he will be required to file an appropriate motion, supported by a memorandum of points and authorities.

[4] The Court lacks the power to direct the filing of criminal charges. *See, e.g*., *Mikhail v. Kahn*, 991 F.Supp.2d 596 (E.D. Penn. 2014) (explaining why state prisoner in section 1983 action cannot compel prosecution of defendants by Pennsylvania's Attorney General); *Bettencourt v. Parker*, No. 1:16-cv-00150-DAD-BAM (PC), 2016 WL 4137242, at *2 (E.D. Cal. Aug. 4, 2016) ("to the extent Plaintiff seeks injunctive 'relief' in the form of a criminal investigation or prosecution, it cannot be obtained through this action. The Court cannot compel any local prosecutor to investigate or instigate a criminal prosecution of this matter"); *Badwi v. Hedgpeth*, No. C 08-02221 SBA (PR), 2011 WL 89726, at *1 (N.D. Cal. Jan. 11, 2011) ("the Court cannot compel the State Attorney General's Office to instigate criminal prosecution").

1   take Plaintiff back to his cell. (*Id.*)

2   Plaintiff alleges he advised Silva of the accident, his injuries, and his need for medical care, but Silva refused to assist Plaintiff with getting medical care. (Doc. 7 at 3.) Silva told Plaintiff, "You ain't gonna front me or my people off. Dude, you can get help on the yard." (*Id.*) When Plaintiff advised Silva that he was dizzy and felt ill, Silva told Plaintiff to either "walk or be dragged back." (*Id.*) Plaintiff walked "injured and suffering in pain, and confusion, [nausea, dizziness,] and neck pain from injury, slip." (*Id.*) Plaintiff alleges he lost consciousness in his cell and woke up and vomited several times. (*Id.*)

Plaintiff states he went to pill call concerned for his health. (Doc. 7 at 5.) When he entered the medical clinic, Plaintiff asked Defendant Lopez for assistance. (*Id.*) Lopez told Plaintiff: "I got a call from Silva about you. If you want to pull some bullshit, do it on your own time, get out of here, with that bullshit. I don't care, and don't think about going man down in here, cause I will write your ass up." (*Id.*) Plaintiff states he left medical "fearing reprisal or write ups." (*Id.*)

After returning to his cell and passing out and vomiting again, Plaintiff went to the "tower officer and asked for help." (Doc. 7 at 5.) The tower officer permitted another inmate to assist Plaintiff to medical in a wheelchair. (*Id.*) A nurse immediately set an appointment with a doctor. (*Id.*) After being examined by the doctor, Plaintiff was transferred to the hospital under emergency concussion protocols. (*Id.*) He was placed in c-spine and neck braces. (*Id.*) Plaintiff states that "all occurred nine hours later" after being denied medical treatment by Lopez, Silva, and Vargas. (*Id.*) An MRI revealed Plaintiff suffered injuries to his head and neck. (*Id.*)

### Applicable Legal Standards

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

6

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

<u>Eighth Amendment Deliberate Indifference to Serious
Medical Needs Claims Against Lopez, Silva, and Vargas</u>

Liberally construing the first amended complaint, Plaintiff states a cognizable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Lopez, Silva, and Vargas. As to the first prong of the deliberate indifference test, Plaintiff states he had a large lump on the back of his head following a fall, was nauseous and dizzy, lost consciousness and was sick to his stomach. *Colwell*, 763 F.3d at 1066. As to the second prong of the test, Plaintiff alleges he advised Defendant Vargas, who witnessed Plaintiff's fall, and Defendants Lopez and Silva of his injuries and his need for medical care. They refused his requests, delaying medical treatment for about nine hours and exacerbating his pain and suffering. *Wilhelm*, 680 F.3d at 1122; *Hallett*, 296 F.3d at 746.

**Claim Two**

Plaintiff's second claim for relief is titled "1st amendment violation for retaliation, retaliation for attempting or wanting to summon medical help, deliberate [indifference] for knowing of an [injury], and denying [] medical, in direct conflict with law, duty. 8th Amendment cruel and unusual punishment." (*Id*.) The Court construes Plaintiff's second cause of action as First Amendment retaliation claims against Defendants Lopez, Silva, and Vargas.

Factual Allegations

Plaintiff alleges that after denying Plaintiff access to medical care following his slip and fall, Defendants Lopez, Silva, and Vargas threatened to lock him in his cell or to write a disciplinary report. (Doc. 7 at 4.) Plaintiff alleges Defendant Vargas advised him that if he kept asking for medical aid, Vargas would have him "sent back to his cell, which did happen." (*Id*.) Vargas's statement to Plaintiff to "stop bitching or I'll put you back into your cell" was "the prelude to retaliation," and Vargas retaliated by calling Silva to take him "back to his cell under false pretenses, stating [Plaintiff] did not want to work." (*Id*. at 4, 6.) Silva retaliated "due to his stance that plaintiff was fronting off his people, by requesting medical attention." (*Id*.) Silva forced Plaintiff back to his cell while Plaintiff was "in a concussed condition and injured state" and lied by telling Plaintiff medical was waiting for him and available on the yard. (*Id*.) Plaintiff asserts that when he went to medical later, he was "met with [immediate hostilities]" by Defendant Lopez. (*Id*.) Lopez threatened to write Plaintiff up if he continued to seek medical aid causing Plaintiff to return to his cell to avoid a write up by Lopez. (*Id*.)

Plaintiff contends Lopez, Silva, and Vargas made a collaborative effort to "carry out a retaliation on the plaintiff for wanting medical help" after his fall. (Doc. 7 at 6.) Plaintiff asserts these defendants carried out "acts of obstruction, delay, retaliation, 'conspiracy,' and deprivative [sic] acts, to keep the plaintiff from getting medical attention." (*Id*.)

Applicable Legal Standards

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); accord *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim*

9

*v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id*. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id*.

<u>First Amendment Retaliation Claims Against Lopez, Silva, and Vargas</u>

Liberally construing the first amended complaint, Plaintiff states cognizable First Amendment retaliation claims against Defendants Lopez, Silva, and Vargas. Plaintiff alleges that he engaged in the protected conduct of seeking medical care or aid for his injuries, these Defendants denied his requests because he was asking for medical care, they did not believe his claims and threatened disciplinary write ups or to lock him in his cell, causing him to retreat from his requests and seek assistance for medical aid. It can be reasonably inferred that Defendants Lopez, Silva, and Vargas's actions did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68; *Watison*, 668 F.3d at 1114.

**Claim Three**

Plaintiff's third claim for relief is titled "[Deliberate Indifference] to Inhumane and Dangerous Work Environment. [Eighth] Amendment Violation. This Eighth Amendment Violation Led to the [Plaintiff's Injury', Which are Serious …." (Doc. 7 at 7.)  The Court construes Plaintiff's third claim for relief to assert Eighth Amendment conditions of confinement claims against Defendants Campbell, Doe Hospital Director, and Doe insurance company.

<u>The Factual Allegations</u>

Plaintiff alleges his injuries occurred on March 2, 2023, when he slipped and fell after water pooled on the floor from a hole in the hospital's roof. (Doc. 7 at 7.) He contends Defendant

Campbell, the Doe Hospital Director, and "Insurance Providers Does, Moes, Roes" of the institutional hospital were "aware of and have been aware of the dangerous, and inhumane conditions of the hospital roof," but keep the hospital open despite the dangerous condition. (*Id.*) Plaintiff asserts that "for two years, numerous plan operation work orders have been submitted to the defendants herein about unstable conditions and delapitated [sic] state of roof." (*Id.*) Plaintiff contends the "Kings County Court" has ordered the prison "stop using these building structures with dangerous conditions in relations to roofs" and to "stop forcing inmates to work in these conditions." (*Id.* at 8.) Plaintiff alleges numerous grievances have been filed "by both staff and officer[s]" regarding the "state of the hospital structure," and injuries from slip and falls have been recorded. (*Id.*) Plaintiff states he "is forced to work at prison hospital due [to] applied [involuntary servitude] …" and cannot refuse to work because he would incur disciplinary actions. (*Id.*) Plaintiff contends the "director of hospitals, choice to not fix roof, and not report the serious possibility of occupants suffering [injury] due to dangerous condition," is responsible and liable. (*Id.*) He asserts Defendant Campbell and the director, along with the insurance provider, "knew of the [existing] dangerous conditions in relation to the roof and structure, from past complaints, past [injuries], and past [maintenance] orders, [stemming] from complaints…." (*Id.*)

<u>Applicable Legal Standards</u>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer*, 511 U.S. 825). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S.

at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Constitution "'does not mandate comfortable prisons.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, citing to *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

Subjectively, if an objective deprivation is shown, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

<u>Eighth Amendment Conditions of Confinement Claims Against Campbell and Doe Hospital Director Only</u>

Liberally construing the first amended complaint, Plaintiff plausibly alleges Eighth Amendment conditions of confinement claims against Defendants Campbell and Doe Hospital

1    Director. Plaintiff alleges these individuals were aware of problems with the institution's hospital
2    roof for a period of two years, staff and inmates had complained about the roof, that injuries had
3    occurred due to the compromised roof, but that the hospital continued to operate despite the
4    dangerous condition at these Defendants' direction or election. *Farmer*, 511 U.S. at 834; *Wilson*,
5    501 U.S. at 303; *Labatad*, 714 F.3d at 1160.

6    Plaintiff fails to state any claim against the insurance carrier, or "Hospital Insurance, Doe,
7    Moes, Roes." The insurance carrier is not a "prison official" as contemplated by the applicable
8    law, and he asserts no facts that could be reasonably construed as a causal connection between
9    that entity and the requirement that it "must not only 'be aware of the facts from which the
10   inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also
11   draw the inference.'" *Toguchi,* 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). There is no
12   basis upon which to presume the insurance carrier was privy to "plan operation work orders,"
13   grievances submitted by staff and inmates, or "Kings County Court" orders. Plaintiff's assertions
14   regarding the insurance carrier are nothing more than mere speculation and are insufficient to
15   state a claim upon which relief can be granted. And because the insurance carrier is not a "prison
16   official" as contemplated by legal authority referenced above, granting Plaintiff leave to amend in
17   this regard would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000); *Cato v.*
18   *United States*, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

19   **V.      CONCLUSION, ORDER AND RECOMMENDATION**

20   The Court **DIRECTS** the Clerk of the Court to make the following modifications to the
21   docket for this action:

22       1. Terminate "C.D.C.R." and "P.I.A." from this action as those entities are not named as
23           defendants in Plaintiff's first amended complaint;
24       2. Substitute "T. Vargas" for "Torres;" and
25       3. Add "Doe, Director of Hospital" as a defendant in this action.
26   For the foregoing reasons, the Court **RECOMMENDS** that:
27       1. This action **PROCEED *only*** on Plaintiff's (1) Eighth Amendment deliberate
28           indifference to serious medical needs claim against Defendants Lopez, Silva, and

Vargas (claim one); (2) First Amendment retaliation claims against Defendants Lopez, Silva, and Vargas (claim two); and (3) Eighth Amendment conditions of confinement claims against Defendants Campbell and Doe Hospital Director (claim three);

2. "Does, Moes, Roes, Insurance Provider [at] Arthur Klirich Hospital," or the insurance carrier or provider, be **DISMISSED** from this action; and

3. Any remaining claims in Plaintiff's first amended complaint be **DISMISSED**.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 9, 2024**                    /s/ *Sheila K. Oberto*
                                                               UNITED STATES MAGISTRATE JUDGE